IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE KIDDE-FENWAL, INC., *et al.*, | : | Chapter 11 |
| Debtors. | : | Bankr. Case No. 23-10638-LSS |
| KIDDE-FENWAL, INC., | : | |
| Plaintiff, | : | Adv. Proc. No. 23-50758-LSS |
| v. | : | (Lead adversary) |
| ACE AMERICAN INSURANCE COMPANY, *et al.*, | : | Civ. No. 24-191-GBW |
| Defendant. | : | |
| KIDDE-FENWAL, INC., | : | |
| Plaintiff, | : | Adv. Proc. No. 24-50015-LSS |
| v. | : | (Consolidated with lead) |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, | : | Civ. No. 24-325-GBW |
| Defendant. | : | |

## MEMORANDUM

The above-captioned adversary proceedings (the "Adversary Proceedings") arise in the chapter 11 cases[1] of Kidde-Fenwal, Inc. (the "Debtor" or "KFI") and certain of its affiliates. The Debtor has initiated an adversary proceeding seeking to establish the Debtor's rights under insurance policies issued by various insurer-defendants ("Insurers"). *Kidde-Fenwal, Inc. v. Ace American Insurance Co., et al.*, Adv. No. 23-50758 (LSS) (the "Insurers Adversary"), D.I. 1 (the "Insurers Complaint"). The Debtor has also initiated an adversary proceeding seeking to establish the Debtor's rights under insurance policies issued by the insurer-defendant Hartford

---

[1] The docket of the chapter 11 cases, captioned *In re Kidde-Fenwal, Inc., et al.*, No. 23-10638 (LSS), is cited herein as "Bankr. D.I. __."

1

Accident and Indemnity Company ("Hartford A&I"). *See Kidde-Fenwal, Inc. v. Hartford Accident and Indemnity Company*, Adv. No. 24-50015 (LSS) (the "Hartford A&I Adversary"), D.I. 1 (the "Hartford A&I Complaint").

Certain insurer-defendants,[2] together with Hartford A&I (collectively, the "Movants") have moved to withdraw the reference of the adversary proceedings "for cause shown" pursuant to 28 U.S.C. § 157(d). (*See* Civ. No. 24-191-GBW, D.I. 1; Civ. No. 24-325-GBW, D.I. 1) (the "Motions to Withdraw the Reference.")

For the reasons set forth herein, the Motions to Withdraw the Reference are denied without prejudice to Movants' rights to request withdrawal of the reference at such time as the Consolidated Adversary Proceeding (as defined below) is ready for trial.

### I. BACKGROUND

#### A. The Debtors and the Chapter 11 Cases

The Debtor, KFI, is a U.S.-based manufacturing company that has continuously owned and operated numerous lines of business related to industrial fire detection and suppression, as well as temperature control products and products to light and control gas burners. (Bankr. D.I. 31 ("First Day Decl.") ¶ 6.) On March 8, 2007, KFI merged with a sister company, Kidde Fire Fighting, Inc., that produced and distributed aqueous film-forming foam ("AFFF"), a fire suppressant product designed to fight fuel-based fires, as part of its National Foam line of business. (*Id.* ¶¶ 27, 41-42.) KFI owned and operated the National Foam business until June 28, 2013, when KFI sold it to an entity controlled by Lloyd's Development Capital, and it was subsequently renamed National Foam, Inc. (*Id.* ¶ 28.) KFI has not owned or operated any AFFF-related businesses since that time. (*Id.*) Since 2016, KFI has been sued in thousands of

---

[2] The Insurers' Motion to Withdraw the Reference was filed on behalf of or joined by 21 insurer defendants; the remaining nine defendants have not requested a withdrawal of the reference.

lawsuits arising from its ownership of the National Foam business. The plaintiffs in those lawsuits generally allege that the National Foam business designed, manufactured, distributed, and sold AFFF in the United States, which Plaintiffs allege included ingredients containing, or with the potential to degrade into, certain types of per- and polyfluoroalkyl substances ("PFAS"), including perfluorinated octanoic acid ("PFOA"). (*Id.* ¶¶ 44, 50-53.) The plaintiffs in those lawsuits allege that certain types of PFAS, including PFOA, cause adverse health and environmental effects that lead to personal injury and property damage. (*Id.* ¶¶ 44, 50-53.)

KFI and certain current and former affiliates, along with numerous unrelated entities, are defendants in more than 7,000 lawsuits that are being coordinated in a multi-district litigation proceeding in the United States District Court for the District of South Carolina, styled *In Re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D.S.C.) (the "AFFF MDL"). (First Day Decl. ¶¶ 46-49.) KFI is also a defendant in AFFF cases proceeding in state courts that have not been transferred to the AFFF MDL. (*Id.* ¶ 46.)

Based on the number and nature of AFFF claims, KFI believes its alleged AFFF liability substantially exceeds KFI's capacity to pay. (*Id.* ¶ 56.) On May 14, 2023, KFI, together with certain affiliates, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since that time, the Bankruptcy Court has overseen the case, presiding over dozens of hearings and issuing orders on various aspects of KFI's ongoing business and progressing this chapter 11 case. On November 21, 2023, the Bankruptcy Court entered an order approving the appointment of Hon. Robert D. Drain (Ret.) and Former U.S. District Judge Layn R. Phillips to serve as mediators (Bankr. D.I. 660) (the "Mediation Order"). As defined in the Mediation Order, the "Mediation Parties" (excluding the Insurers) have been engaged in mediation for many months on what the Debtor characterizes as "several of the key obstacles to a successful reorganization, including resolving KFI's potential claims against corporate affiliates and its tort liability." (Civ.

No. 24-191-GBW, D.I. 10 at 11.) Per the Fifth Stipulation Extending the Mediation, mediation efforts will be ongoing through at least June 30, 2024. (*See* Bankr. D.I. 1199.)

**B.    The Consolidated Adversary Proceeding**

Since the 1960s, various insurers—including defendants in the Insurers Adversary or their predecessors-in-interest—issued or subscribed to insurance policies (including excess and/or umbrella policies) covering the National Foam business. (Insurers Complaint ¶ 113.) KFI asserts that each of the policies provides broad coverage for claims seeking damages due to alleged bodily injury, personal injury, and/or property damage arising out of the manufacture, sale, and distribution of AFFF by the National Foam business. KFI asserts that certain defendant Insurers also issued or subscribed to primary policies obligating those insurers to defend KFI, or to pay or reimburse KFI for all costs incurred by KFI in the investigation and defense of the AFFF actions. (*Id.* ¶ 120.) KFI asserts that it is the legal successor to the rights under each of these policies. (*Id.* ¶ 114.) KFI asserts that these rights constitute one of the most important assets—if not the most important asset—of the Debtor's estate available to pay creditors. KFI asserts that none of the defendant insurers has acknowledged its coverage obligations to KFI for the AFFF claims. (*Id.* ¶¶ 125-126.) KFI asserts that the face value of the policies insuring KFI total billions of dollars. (Civ. No. 24-191-GBW, D.I. 10 at 4).

KFI commenced the Insurers Adversary against certain of its insurers on November 9, 2023, filing a complaint that seeks (i) declaratory relief setting forth the rights, duties, and liabilities of the parties under the insurance policies in connection with the AFFF claims, (ii) damages from its primary insurers arising out of those insurers' failure to acknowledge or perform their contractual obligations under the policies to defend, pay, or reimburse KFI for all costs incurred in connection with the investigation and defense of the AFFF claims, and (iii) costs and attorneys' fees.

The Insurer Adversary sought the same relief against certain affiliates of Hartford A&I (but not Hartford A&I). Hartford A&I thereafter identified additional relevant policies that it had issued, in response to which the Debtor filed the Hartford Adversary against Hartford A&I to establish its rights under those policies. (*See* Hartford A&I Complaint).

The two Adversary Proceedings are substantially similar, as both seek to determine KFI's rights under insurance policies with respect to its potential liability arising from the manufacture and distribution of AFFF. On May 17, 2014, the Bankruptcy Court entered an order consolidating the Insurers Adversary with the Hartford A&I Adversary under Adv. No. 23-50758 (LSS) (the "Consolidated Adversary Proceeding"). (*See* Adv. No. 24-50015 (LSS), D.I. 45 (the "Consolidation Order")). As set forth in the Consolidation Order, "[t]he Adversary Proceedings are hereby consolidated for all purposes, including through trial … Hartford A&I shall be treated as if it were a defendant to the complaint" in Adv. No. 23-50758 (LSS). (*Id.*)

### C. The Motions to Withdraw the Reference

By order of the Bankruptcy Court, the Official Committee of Unsecured Creditors (the "Committee")[3] was permitted by the Bankruptcy Court to intervene in the Insurers Adversary (*see* Civ. No. 24-191-GBW, D.I. 32). In connection with the pending Motions to Withdraw the Reference, the Committee has moved to intervene in the Hartford A&I Adversary as of right pursuant Federal Rule of Civil Procedure 24 and 11 U.S.C. § 1109(b). (Civ. No. 24-325-GBW, D.I. 15 (the "Committee's Motion to Intervene.")) The docket reflects no opposition to the Committee's Motion to Intervene. Randi S. Ellis, as the legal representative for Future PFAS

---

[3] On May 31, 2023, the Office of the United States Trustee for the District of Delaware appointed the UCC pursuant to section 1102 of the Bankruptcy Code. (*See* Bankr. D.I. 83.)

Personal Injury Claimants (the "FCR")[4] has also moved to intervene as of right pursuant to Federal Rule of Civil Procedure 24 and 11 U.S.C. § 1109(b). (*See* Civ. No. 24-191-GBW, D.I. 36; Civ. No. 24-325-GBW, D.I. 22) (the "FCR's Motions to Intervene.") The docket reflects no opposition to the FCR's Motions to Intervene.

The Court has considered the Movants' opening briefs[5] in support of the Motions to Withdraw the Reference, the oppositions to the Motions to Withdraw the Reference filed by the Debtor[6] and the Committee,[7] the FCR's joinders[8] to the Committee's oppositions, and the Movants' replies in further support of relief.[9] Briefing on the Motions to Withdraw the Reference is complete.

## II. JURISDICTION AND STANDARDS OF REVIEW

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases arising under title 11 to the United States Bankruptcy Court for the District of Delaware. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet).

Federal law provides two bases for withdrawing that reference: mandatory withdrawal and permissive withdrawal. 28 U.S.C § 157(d). Mandatory withdrawal is not at issue here. Permissive withdrawal allows "any case or proceeding" to be withdrawn "in whole or in part . . .

---

[4] On January 24, 2024, the Bankruptcy Court entered an order appointing Randi S. Ellis as Future Claimants' Representative for Future PFAS Personal Injury Claimants *Nunc Pro Tunc* to December 27, 2023. (*See* Bankr. D.I. 863.)

[5] Civ. No. 24-191-GBW, D.I. 1-2; Civ. No. 24-325-GBW, D.I. 1.

[6] Civ. No. 24-191-GBW, D.I. 10; Civ. No. 24-325-GBW, D.I. 17.

[7] Civ. No. 24-191-GBW, D.I. 32; Civ. No. 24-325-GBW, D.I. 17-2.

[8] Civ. No. 24-191-GBW, D.I. 38; Civ. No. 24-325-GBW, D.I. 24.

[9] Civ. No. 24-191-GBW, D.I. 31; Civ. No. 24-325-GBW, D.I. 20.

on the [district court's] own motion or on timely motion of any party, *for cause shown*." 28 U.S.C. § 157(d) (emphasis added).

"Although the statute does not define "cause shown," the Third Circuit has set forth five factors that may be considered in determining whether cause exists to withdraw the reference: (1) promoting uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, (4) expediting the bankruptcy process, and (5) the timing of the request for withdrawal." *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2 (D. Del. Mar. 28, 2023) (citing *In re Pruitt*, 910 F.2d 1168 (3d Cir. 1990)). Other factors considered by courts analyzing whether withdrawal is appropriate are whether the claim is a core bankruptcy proceeding or whether it is non-core, and whether the parties have requested a jury trial. *Id.* (citing *In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996)).

With respect to such permissive withdrawal, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted). "To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference." *In re NDEP Corp.*, 203 B.R. at 907. "As noted by the Third Circuit, 'cause' to withdraw the reference 'will be present in only a narrow set of circumstances.'" *In re FTX Trading Ltd*, 2024 WL 21542, at *2 (D. Del. Jan. 2, 2024) (quoting *In re Pruitt*, 910 F.2d at 1171 (Mansmann, J., concurring)).

III. ANALYSIS

    A. **Whether the Proceeding Is a Core or Non-Core Proceeding**

7

The Insurers' primary argument is that the Consolidated Adversary Proceeding is a non-core proceeding, for which the Bankruptcy Court lacks jurisdiction to enter a final order, and any ruling would require de novo review in this Court. Accordingly, the Insurers argue, the entire proceeding should be litigated in this Court. (Civ. No. 24-191-GBW, D.I. 1-2 at 2). Hartford A&I joins in the argument that the litigation is "limited to state law contract interpretation regarding insurance coverage" so reference should be withdrawn. (Civ. No. 24-235-GBW, D.I. 1 at 3). As the Insurers themselves point out, however, the rulings in every non-core adversary proceeding are subject to *de novo* review. If the prospect of *de novo* review were enough to demonstrate cause for withdrawal, then District Courts would have cause to withdraw the reference for every non-core adversary proceeding. As this Court has repeatedly made clear, "[p]roceedings should not be withdrawn for the sole reason that they are non-core." *Hatzel & Buehler*, 106 B.R. at 371; *In re FTX Trading Ltd.*, 2024 WL 21542, at *5 (same).

Rather, withdrawing the reference in a non-core proceeding requires something more, *see* 28 U.S.C. § 157(d) (district court may withdraw reference only for "cause shown"); *In re LTC Holdings, Inc.*, 2019 WL 4643801, at *5 (D. Del. Sept. 24, 2019) (rejecting withdrawal of reference where movant "failed to demonstrate any 'contravening policy' which rebuts the presumption created by section 157(d) that this non-core proceeding . . . should be adjudicated in bankruptcy court"). The Insurers urge an exception to the rule for state law insurance coverage litigation and cite several cases in support. (*See* Civ. No. 24-191-GBW, D.I. 1-2 at 9). Although certain out-of-District courts have come to a different conclusion in non-core proceedings, this Court has recognized that the practice in those courts "differs from this Court's general practice of withdrawing the reference at such time as the matter is ready for trial, so that the Bankruptcy Court, which is already familiar with the parties and issues, may oversee discovery and pre-trial matters, and narrow the issues for trial," a practice which has "promoted judicial economy in this

Court." *In re 24 Hour Fitness Worldwide, Inc.*, 2022 WL 605661, at *3 (D. Del. Jan. 4, 2022) (denying without prejudice a motion to withdraw reference in non-core insurance coverage proceeding with leave to renew at such time as proceeding is trial ready).

  **B.**  **Whether the Parties Request a Jury Trial**

  In this case, the Debtor has demanded "a trial by jury on all issues" relating to its breach of contract and declaratory judgment claims. (Insurers Complaint ¶ 25; Hartford A&I Complaint at 19). Movants will demand a jury trial as well. (*See* Civ. No. 24-191-GBW, D.I. 1-2 at 9). Accordingly, the Insurers argue, the case should be removed to this Court. (*Id.* at 9-10).

  A party's "potential entitlement" to a jury trial "at some future date is not sufficient grounds to withdraw the reference," particularly before any dispositive briefing has concluded and before discovery has commenced. *In re TZEW Holdco LLC*, 2023 WL 2663047, at *2-3; *see also In re Am. Classic Voyages Co.*, 337 B.R. 509, 509 (D. Del. 2006) ("[I]t is well-settled that a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." (citation omitted)). "In deciding whether to withdraw a case from the bankruptcy court based on a jury demand, courts consider (1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court is familiar with the issues presented." *In re FTX Trading*, 2024 WL 21542, at *3. These factors weigh against withdrawal at this time.

    **1.**  **Whether the Proceeding Is Likely to Reach Trial**

  The Court agrees that it is too soon to tell whether this case will ever reach a jury trial and this factor weighs against withdrawal of the reference. As the Insurers noted at the time of their filing: "KFI initiated this adversary proceeding only three months ago, in November 2023; no discovery has taken place; no court conferences have been held; and the Motion is being filed contemporaneously with Movants' first response to the Complaint." (Civ. No. 24-191-GBW,

9

D.I. 1-2 at 6). Based on the Court's review of the docket, the first response to the Insurers Complaint was filed the same day as the Insurers' Motion to Withdraw the Reference, and the first formal discovery requests by any party were served on February 29, 2024. Discovery is therefore in its early stages. The Bankruptcy Court's scheduling order to govern the Consolidated Adversary Proceeding, which was entered on April 20, 2024 (Adv. No. 23-50758 (LSS), Adv. D.I. 297), sets a fact discovery deadline of June 27, 2025, with dispositive motions to be filed by March 27, 2026. Accordingly, this "case is in the early stages with unresolved pre-trial matters, including discovery, [and] 'one can only speculate when it will proceed to trial, if at all.'" *In re FTX Trading*, 2024 WL 21542, at *4 (quoting *In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004)).

### 2. Whether Protracted Discovery with Court Oversight Will Be Required

With respect to whether discovery oversight will be required, it is clear that significant discovery will be required to adjudicate the Insurers Complaint which asserts claims against more than thirty insurer defendants. *In re FTX Trading*, 2024 WL 21542, at *4. The Debtor asserts that it will need to take discovery of certain insurers who have refused to provide even the relevant policies at issue, and that certain insurer defendants have already sought to obtain (through both informal and formal requests) hundreds of thousands of documents potentially relevant to the AFFF claims against KFI. (Civ. No. 24-191-GBW, D.I. 10 at 9.) These assertions are not disputed by the Insurers or Hartford A&I. As the Bankruptcy Court will already have discovery oversight over other aspects of the bankruptcy—including into the scope of AFFF liabilities and potential claims advanced by a special committee of KFI's board of directors against current and former corporate affiliates—it makes little sense to carve out this one slice of related discovery into a separate proceeding in another Court. *See In re TZEW*, 2023 WL 2663047, at *3 (denying motion to withdraw reference where it was "safe to assume that

significant discovery—and Bankruptcy Court oversight of same—would be required to adjudicate a Complaint against eight separate individuals").

### 3. Whether the Bankruptcy Court is Familiar with the Issues Presented

Finally, the Bankruptcy Court has presided over KFI's chapter 11 case for more than a year, since May 2023, and has obtained an understanding of KFI's current and historical businesses and corporate structure, as well as the various potential claims to be litigated related to the bankruptcy. For this reason, the Bankruptcy Court is uniquely equipped to handle any discovery or other pre-trial issues that arise from the Consolidated Adversary Proceeding. *In re LTC Holdings*, 2019 WL 4643801, at *8 ("The parties' resources, however, are likely better served by the Bankruptcy Court's retention of the Adversary Proceeding based on its familiarity with the underlying facts and issues.").

The Court agrees with the Debtor that a jury demand offers little basis for departure from the well-established practice in this Court: "permitting the Bankruptcy Court to oversee pretrial matters . . . , and withdrawing it only when it is ripe for a jury trial," which "promotes judicial economy and a timely resolution of [a] case." *In re FTX Trading*, 2024 WL 21542, at *3 (quoting *In re LTC Holdings*, 2019 WL 4643801, at *5); *see In re 24 Hour Fitness*, 2022 WL 605661, at *3 (same).

### C. The *Pruitt* Factors

For many of the reasons discussed above, application of the *Pruitt* factors—factors that the Third Circuit has identified for determining whether cause exists to withdraw the reference—also militates against permissive withdrawal. "Importantly, these factors are not weighed 'on a scale of equipoise'—rather, the [Movants] must 'overcome a scale already heavily weighted against withdrawal.'" *In re Elk Petroleum, Inc.*, 2022 WL 4355285, at *4 (quoting *Feldman v. ABN AMBRO Mortg. Grp., Inc.*, 2020 WL 618604, at *7 (E.D. Pa. Feb. 10, 2020)).

### 1. Promoting Uniformity in Bankruptcy Administration

The Insurers argue that withdrawal of the reference would promote uniformity in bankruptcy administration. "Indeed, nothing could be more uniform than having this one Court handling those matters from day one" and it would "likely be more efficient for this court to manage the case through the pretrial process." (Civ. No. 24-191-GBW, D.I. 1-2 at 10-11 (quoting *U.S.A. Floral Products, Inc*, 2005 WL 3657096 at *2 (D. Del. Jul. 1, 2005)). The Debtor disagrees, asserting, among other things, that withdrawing the reference may "undermine the mediation framework set in place by the Bankruptcy Court." (Civ. No. 24-191-GBW, D.I. 10 at 11). According to the Debtor:

> If progress is made in the mediation, KFI's insurers likely would have to be involved at some point, including because KFI's insurance recovery could be a cornerstone of a successful plan. Given the relationship between resolving this adversary proceeding and achieving a plan of reorganization, the Bankruptcy Court and its appointed mediators must coordinate that process. Carving this proceeding out of the main Chapter 11 case could frustrate the mediation and progress towards a plan, further undermining the administration of the bankruptcy.

(*Id.*) Similarly, the Committee contends that "[a]ny mediated settlement reached between the Debtor and the UCC will likely include the resolution of issues relating to the Debtor's insurance policies." (Civ. No. 24-191-GBW, D.I. 32 at 5). According to the Insurers, "This speculation deserves no credit since KFI has chosen not to invite any defendants in the Adversary Proceeding to mediate." (Civ. No. 24-191, D.I. 31 at 5). "Whatever deal KFI might seek with its creditors, the coverage issues will remain to be litigated, and whether that happens in this Court or the Bankruptcy Court will not affect those discussions." (*Id.*) The argument by the Debtor and Committee is certainly less persuasive in light of the apparent fact that the Movants were not invited to participate in the mediation.

The record supports the Debtor's contention, however, that it has "very limited assets, meaning that protracted litigation and chapter 11 costs serve only to dissipate those assets so that they are not available to pay any valid creditor claims." (First Day Decl. ¶¶ 36-40, 46-56 (summary of assets and liabilities); Bankr. D.I. 594 ¶ 3.) As the Debtors' counsel and the Bankruptcy Court noted during a hearing approving the Mediation, the parties are best served focusing their attention on resolving issues through the Mediation. (*See* 11/16/23 Tr. 36:10–19; 37:9–11.) Granting the Motions to Withdraw the Reference now, and moving a large, complex, and costly coverage litigation to another court, just as the Debtor and its creditors are attempting to mediate settlement and coalesce around a plan, may potentially drain estate assets, undermine mediation efforts, and delay the bankruptcy process.

### 2. Reducing Forum Shopping and Confusion

The Insurers argue the request for relief does not involve forum shopping: "it simply involves allowing the court—within the same judicial district and applying the same law—that is most capable of fully and finally resolving the proceeding to do so." (Civ. No. 24-191-GBW, D.I. 1-2 at 12.) The Debtor argues that there is no real efficiency rationale for removing this proceeding from the Bankruptcy Court and that Movants merely seek "the forum they believe is more favorable to them." (Civ. No. 24-191-GBW, D.I. 10 at 12.) In these circumstances, the Debtor argues, "[p]rematurely removing the case from the bankruptcy court would tend to encourage forum-shopping." (*Id.* (quoting *Seitz as Trustee for City Line Behav. Healthcare, LLC & Life of Purpose-Pennsylvania, LLC v. Rothermel*, 638 B.R. 846, 851 (E.D. Pa. 2022)). Along the same lines, the Committee argues that the Insurers seek to litigate coverage issues in this Court "to avoid being subject to decisions made by the Bankruptcy Court" based on "settled legal principles" that the Insurers may contest: "For example, bankruptcy courts routinely find that the debtor's insurance policies are assignable to a post-bankruptcy trust, notwithstanding any

13

contrary provisions in the insurance agreements." (Civ. No. 24-191-GBW, D.I. 32-2 at 8-9). The Court finds no support for assertions of gamesmanship. The Insurers have merely asked to have insurance coverage issues decided by the only Court that has final authority to do so. This factor does not weigh against permissive withdrawal.

### 3. Conserving the Debtor's and Creditors' Resources

The Court agrees, however, that withdrawing the Consolidated Adversary Proceeding now may result in unnecessary expense, particularly for the Debtor. The Bankruptcy Court has presided over the chapter 11 cases for over a year and is familiar with many of the underlying facts and issues relevant to the litigation. As would be expected in litigation of this nature, many pretrial matters are already pending, even at this early stage, which are most efficiently handled by the already familiar Bankruptcy Court. Among other things, objections to discovery requests have been filed. (*See* Adv. 23-50758 (LSS), D.I. 252, 255-258, 260, 264, 274, 327, 336, 356, 361.) Certain insurers have also moved to dismiss the Consolidated Adversary Proceeding. (Adv. D.I. 142.) Certain insurers have moved to stay the Consolidated Adversary Proceeding pending arbitration. (Adv. D.I. 231.) The Committee intends to seek a stay of the Consolidated Adversary Proceeding "pending a determination of what entities will ultimately have rights to pursue the insurance"). (Civ. No. 24-191-GBW, D.I. 10 at 7 n.5.) It makes little sense for this Court to get involved at this early stage. *In re Circle of Yoakum, Tex.*, 2006 WL 2347710, at *2 (D. Del. June 23, 2006) (finding that judicial economy favored Bankruptcy Court resolving pretrial proceedings based on its familiarity with facts of the case).

### 4. Expediting the Bankruptcy Process

Nor is the Court persuaded that withdrawal of the reference of the Consolidated Adversary Proceeding would expedite the bankruptcy process. In addition to the concerns cited above, issuing such an order now may impede the bankruptcy process by introducing uncertainty

14

into the Mediation, hampering the Mediation Parties' ability to reach a settlement, and delaying the formation and confirmation of a plan. *In re AgFeed*, 565 B.R. 556, 565 (D. Del. 2016) (finding that a District Court's "duplicati[on]" of "efforts at an early stage of the case may result in unnecessary expenses for the parties, particularly given that dispositive motions and settlement may resolve the proceeding in advance of trial"); *In re Enron Corp.*, 2004 WL 1197243, at *4 (S.D.N.Y. May 28, 2004) ("Interests of efficiency and uniformity accordingly lie with denying the instant motion and preserving the continuity of the mediation process.").

### 5. Timing of the Request for Withdrawal

Finally, with respect to timing of the request for withdrawal, Congress has mandated that a party seeking to withdraw a proceeding from a bankruptcy court to a district court can do so only upon the filing of a "timely" motion. 28 U.S.C. § 157(d). Section 157, however, does not define what the court should consider timely. *See id.* Timeliness is "measured by the stage of the proceedings in the Bankruptcy Court." *In re U.S.A. Floral Products, Inc.*, 2005 WL 3657096, at *1 (internal quotation marks omitted). "The purpose of the timeliness provision is to prevent unnecessary delay and stalling tactics." *In re Schlein*, 188 B.R. 13, 15 (E.D. Pa. 1995). As the Consolidated Adversary Proceeding is the early stages of litigation, Movants' requests are timely made, and this factor does not weigh against permissive withdrawal.

In sum, based on a consideration of the above factors, the Court does not find cause to withdraw reference of the Consolidated Adversary Proceeding at this time. The mediation remains ongoing, "through and including June 30, 2024, subject to further extension in accordance with the Mediation Order" (Bankr. D.I. 1199), it may ultimately include the Insurers (*see* Bankr. D.I. 660 ¶ 3) and affect the overall direction of this litigation. Even if mediation is unsuccessful, and even assuming certain state law coverage issues must ultimately be decided by

15

this Court,[10] pre-trial litigation will involve significant discovery among the Debtor and at least thirty insurer defendants. Movants ultimately present no contravening policy to rebut the presumption that permitting the Bankruptcy Court to oversee pretrial matters—including ongoing Bankruptcy Court-ordered mediation efforts and significant remaining discovery involving numerous parties—and withdrawing the reference only when it is ready for a trial will promote judicial economy and a timely resolution of this case.

## V.     CONCLUSION

For the reasons explained above, the Court will deny the Motions to Withdraw the Reference without prejudice to Movants' rights to move for withdrawal of the reference at such time as the matter is ready for trial. A separate Order will be entered.

_____
UNITED STATES DISTRICT JUDGE

Date: June 11, 2024

---

[10] The Court expresses no opinion on this point.